IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MIRIAM FLORES, individually and as parent of Miriam Flores, a minor child, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>STATE OF ARIZONA, et al.,<br><br>    Defendants. | No. CV 92-596-TUC-RCC<br><br>**ORDER "WO"** |

On October 31, 2005, the Court took under advisement a request made by Plaintiffs for sanctions due to the State of Arizona's failure to take action to comply with the Court Order (Docket No. 296), that found that English Language Learners ("ELL") programs must be funded in a manner that is not arbitrary and capricious. Also, the Court took under advisement the following motions: Defendant's Opposition to Motion for Sanctions and Request for Accelerated Determination Re: Consideration of Federal Funds (Docket No. 303), and the Opposition of ACEC and AGC to Plaintiffs' Motion for Sanctions (Docket No. 300).

The Court was also asked to preclude the State from requiring ELL students to pass the Arizona's Instrument to Measure Standards ("AIMS") test as a necessary criteria to receive a diploma and graduate from high school until the State has properly funded ELL

programs for a sufficient period of time to provide ELL students with a meaningful opportunity to achieve the State's academic standards that are measured by the AIMS test.

Defendants have asked the Court for an advisory opinion to decide the status of federal funds in relation to the determination regarding the adequacy of ELL funding. Plaintiffs have asked the Court for attorney's fees for their continued efforts in trying to get the State to comply with its legal obligations to fund ELL programs properly.

The Court has reviewed this case from its inception which was 1992. Thousands of children who have now been impacted by the State's continued inadequate funding of ELL programs had yet to begin school when Plaintiffs filed this case. After extensive lawyering on both sides, the case finally resulted in Judge Marquez deciding in February 2000, that the method used by the State for funding ELL programs bore no rational relationship to the actual cost of providing such programs and was inadequately funded in an arbitrary and capricious manner that was violative of the Equal Education Opportunity Act ("EEOA") of 1974.

The legislature in the first instance decided after some prodding by both the Plaintiff and the Court, that they would do a cost study for determining the amounts necessary to achieve this purpose. In December of 2001, the legislature passed House Bill ("HB") 2010. This bill was to be an interim measure that would allow for the study to be completed and for the legislature to have time to pass the necessary legislation to comply with the Court's order. Ultimately, with the Court's consent, the legislature gave itself nearly three years to accomplish this process. In January 2005, Plaintiffs approached the Court to complain that the study had yet to be completed and that they believed more than enough time had passed for the legislature to complete its obligation.

On January 28, 2005, the Court gave the State until the close of the 2005 legislative session to comply with the Court's Order and essentially to fulfill its promise to set the appropriate funding for ELL programs. When the Court issued that Order, it had already been asked by the Plaintiffs to apply sanctions for the State's failure to live up to its

obligation. It was with that backdrop that the Court gave the legislature and the State one last chance to comply with Judge Marquez' Order of February 2000.

Defendants allege that they take their obligation to establish adequate funding for ELL programs very seriously. Defendants assert that due to good faith differences between the States' executive and legislative branches as it pertains to the needs of the ELL students, they were unable to enact the legislation contemplated by the January 28, 2005, Court order. Defendants argues that their non-compliance does not equate to "indifference" as asserted by the Plaintiffs' Motion for sanctions.

The legislature passed HB 2718 at the end of the 2005 session, and the Governor vetoed it because she believed it was inadequate to comply with the Court's Order. Not much activity has transpired since. The legislature believes that it has complied with the Court's Order. The Governor disagrees. Whether or not the legislative or executive branch is right or wrong and whether or not either has acted in good faith is of no moment because nearly six years have passed since the Court issued the original Order requiring the State to establish adequate funding for ELL programs.

The Court can only imagine how many students have started school since Judge Marquez entered the Order in February 2000, declaring these programs were inadequately funded in an arbitrary and capricious manner that violates ELL students' rights under the EEOA. How many students may have stopped school, by dropping out or failing because of foot-dragging by the State and its failure to comply with the original Order and compliance directives such as the Order issued on January 28, 2005? Plaintiffs are no longer inclined to depend on the good faith of the Defendants or to have faith that without some extraordinary pressure, the State will ever comply with the mandates of the respective Orders issued by this Court.

Plaintiffs contend that after nearly six years, it is clear that using Court Ordered deadlines is not an effective means for enforcing the State's compliance with the EEOA of 1974 and this Court's declaratory judgment. Plaintiffs assert that the establishment of yet

1 another deadline by this Court will not guarantee relief.  As such, Plaintiffs argue, that this
2 Court must consider more meaningful sanctions as a coercive measure to ensure the State's
3 full and swift compliance and provide ELL students with the rights to which they are
4 entitled under the law.

### I. Motion for Injunctive Relief

Plaintiffs assert that in 1991, the State Board of Education adopted academic standards that prescribed the content knowledge in subjects including reading, writing and mathematics that students should master at every grade level.  Plaintiffs also assert that after the adoption of the academic standards, legislation was enacted that required the State Board of Education to adopt a competency test as a prerequisite to graduation from high school.  A.R.S. § 15-701.01(A)(3).  The AIMS test is designed to measure student achievement of the State Board adopted academic standards in reading, writing and mathematics.  A.R.S. § 15-741.

Plaintiffs contend, regardless of their performance, requiring ELL students to pass the AIMS test to graduate while being denied the equal participation guaranteed to them under federal law, is patently unfair.  Plaintiffs assert that this case was filed to protect the rights of ELL students under the EEOA to equal participation in instructional programs. 20 U.S.C. § 1703(f).  As such, Plaintiffs argue that the relief this Motion seeks is necessary to ensure that ELL students are not harmed any further by the State's intransigence as it pertains to the Court's order and the law.

Plaintiffs assert that regardless of AIMS test scores, ELL students have been attending schools with ELL programs that this Court declared are illegally underfunded. Additionally, Plaintiffs argue, it is unfair to those students that they be required to pass a graduation test that is premised on a system in which all students have the same opportunity to achieve the State's academic standards.  Plaintiffs further argue that the relief requested in this motion would be necessary even if ELL students as a group, were performing as well as, or better than, their peers on the AIMS test.

1  Plaintiffs state that the ELL failure rate is more than three times the failure rate of
2 English proficient students. Plaintiffs contend that 82% of ELL students continue to fail
3 the AIMS test in reading and 81% ELL students continue to fail in writing. As such,
4 Plaintiffs argue without adequately funded programs, ELL students cannot be expected to
5 succeed to the same extent as their peers until the language barriers that impede their equal
6 participation are removed as required by the EEOA.

7  Plaintiffs argue that this Court should exercise its broad equitable powers to protect
8 ELL students from permanent and irreparable harm due to the State's continuing failure to
9 comply with the Court's judgment and the EEOA. Plaintiffs argue that if past discrimination
10 is sufficient for the exercise of the Court's equitable powers, then the current discrimination
11 that is visited on ELL students by the State should be more than sufficient to invoke the
12 Court's equitable powers to protect ELL students. *See Spallone v. United States*, 493 U.S.
13 265, 276 (1990).

14  Here, Plaintiffs argue that courts have enjoined the administration of high stakes
15 graduation tests when their application would be unfair or perpetuate past discrimination.
16 *Debra P. v. Turlington*, 644 F.2d 397 (5th Cir. 1981). In, *Debra P.*, the Court enjoined the
17 administration of the graduation test on both due process and equal protection grounds.[1]
18 Plaintiffs argue that the application of *Debra P.*, in this case is clear. Plaintiffs contend
19 that just as it was unfair to punish black students for deficiencies created by the dual
20 school system in *Debra P.*, it would be equally unfair to punish ELL students for the
21 deficiencies caused by Arizona's continuing failure to adequately fund ELL programs. As
22 such, Plaintiffs request that the Court enjoin the State from requiring ELL students to pass
23 the AIMS test in order to graduate from high school. Additionally, Plaintiffs request that
24 the AIMS test not be used to preclude ELL students from graduating until ELL programs

---

[1] In *Debra P.*, the Court determined that, in part, the failures of black students taking the test could be attributed to the unequal education they received during the period when Florida maintained a dual school system based on race.

have been adequately funded for a sufficient period of time so that ELL students will have a meaningful opportunity to achieve the academic standards that are assessed by the AIMS test.

Defendants assert that the AIMS issue raised by the Plaintiffs was rejected by the Court in 1999. Defendants further argue that Plaintiffs did not appeal that decision and cannot now circumvent that ruling by claiming they are entitled to the same result as a way of enforcing compliance with the Court's EEOA ruling. Defendants also contend that Plaintiffs failed to meet their burden of proof as it pertains to the AIMS test.

Defendants contend that the Court prefaced its January 2000 Order by noting that the August 1999 trial "addressed only two specific issues ... 1) whether or not Defendants' [sic] adequately fund and oversee the LAU program in NUSD, and 2) whether or not the AIMS test disparately impacts minority students at NUSD." *Flores v. Arizona*, 172 F. Supp. 2d 1225, 1226 (D. Ariz. 1999).[2] Finally, Defendants argue that although Arizona is approaching the first year in which passing the AIMS test will be a requirement for graduation from high school for all students, this is a fact that Plaintiffs knew six years ago.[3]

Here, Defendants contend that Plaintiffs are reduced to arguing that they are entitled to relief because ELL students attend schools that this Court declared are illegally underfunded. Defendants argue that this logic is incorrect for two reasons. First, it would effectively allow Plaintiffs to use their victory on their EEOA claim as a basis for getting relief on the AIMS clam that they lost. Second, passing the AIMS test is not the only

---

[2] The Court then stated, "Plaintiffs' Second Amended Complaint did not include the AIMS Challenge; nevertheless, the Court heard the parties' arguments and finds that Plaintiffs failed to present evidence at trial to make a prima facie case of disparate impact." *See also Lau v. Nicols*, 414 U.S. 563 (1974).

[3] "The State Board has also determined that in order to receive high school diplomas, all students in the Arizona public school system, except those with certain disabilities, must earn satisfactory AAS/Essential Skills scores on the AIMS tests, effective in 2000-2001." *Flores v. Arizona*, 48 F. Supp 2d 937, 956 (D. Ariz. 1999).

1 graduation requirement for Arizona students including ELL students. There are a number
2 of graduation requirements, for example, a minimum number of credits that students must
3 successfully complete. Defendants contend that under Plaintiffs' arguments, if the AIMS
4 testing requirement is not imposed on ELL students this year, it should not have been
5 imposed at any time over the past 5 years.

6 Defendants argue that granting relief requested by Plaintiffs might actually create
7 rather than eliminate impermissible disparate treatment and thus possibly raise equal
8 protection issues. Defendants contend the non-application of the AIMS test would raise
9 significant equal protection issues because ELL students would be exempt from passing
10 the AIMS test, however, the AIMS test graduation requirement would stand for all non-
11 ELL students.

12 Defendants contend that Plaintiffs not only failed to present a prima facie claim, but
13 they failed to even explain how requiring ELL students to pass the AIMS test to graduate
14 violates due process and equal protection rights. Defendants argue that in *Debra P.*, the
15 Court initially concluded that due process concerns were implicated because the testing
16 requirement was imposed at "the eleventh hour."[4] Unlike *Debra P.*, Defendants argue,
17 Arizona students have had nearly ten years notice that passing the AIMS test would
18 become a graduation requirement. Defendants further state that the underlying district
19 court decision in *Debra P.* found four to six years sufficient.[5] Defendants contend that
20 *Debra P.* did find an equal protection violation that was based on the trial court's finding
21 that black students' poor performance on the exit exams was related to Florida's relatively

---

[4]*Debra P.*, 644 F.2d 397 (5th Cir. 1981).

[5]*Debra P.*, 730 F.2d at 1407 (citing *Debra P. v. Turlington*, 474 F. Supp. at 244, 267) (M.D. Fla. 1979); *cf. Williams v. Austin Indep. Sch. Dist.*, 796 F. Supp. 251, 253-54 (W.D. Tex. 1992) (upholding exit exam requirement and distinguishing *Turlington* because "In this case, students in Texas have known for seven years that they must pass a comprehensive examination before receiving their diplomas.").

- 7 -

1 recent operation of a school system segregated on the basis of race. However, Defendants
2 argue, no such claim has been made here.

3 Defendants argue that Plaintiffs failed to mention that, upon remand, the district
4 court lifted its injunction against the use of high stakes testing. *Debra P. v. Turlington*,
5 564 F. Supp. 177, 189 (M.D. Fla. 1983), *aff'd* 730 F.2d 1405 (11th Cir. 1984). Defendants state
6 the court did so because of its decision that the Florida test was "constitutionally
7 impermissible only if the disproportionate failure rate among black students is due to the
8 learning deficits created by the past segregation of the Florida public schools or its
9 effects." *Id.* at 188.

10 Defendants argue students have known for years that passage of the AIMS test
11 would eventually be required for graduation; students have five separate opportunities to
12 pass the test; and the State has made available tutoring funds for remedial efforts designed
13 to help students, including ELL students, who may need additional assistance.
14 Additionally, Defendants argue, under recently enacted legislation, students graduating
15 in 2006 or 2007 will be able to apply grades received in some high school classes to
16 augment their AIMS test scores. A.R.S. § 15-701.01.

17 Defendants state that the Tenth Amendment requires that the Court should give
18 due deference to the State's decision to require students to pass the AIMS test.
19 Defendants argue that in the absence of proof of discrimination, courts are rightly reluctant
20 to interfere with the great latitude given the States in the area of education. Defendants
21 state that even the cases Plaintiffs cite acknowledge this principle. Also, Defendants argue
22 that the *Williams* court acknowledged this principle in its analysis.[6] Defendants submit

---

[6]"The level of education and academic achievement necessary to obtain a diploma ... is appropriately a judgment call for the person elected for that state responsibility and those experienced persons responsible for educating and preparing students to achieve the established level of competence. Any interference in this process is simply destructive to the attempts by the state to salvage its educational system, and this includes interference by the federal judiciary." 796 F. Supp. at 256.

1 that Plaintiffs have failed to prove the extraordinary circumstances that would warrant the
2 extraordinary interference they seek. As such, Defendants argue that Plaintiffs' motion
3 seeks a remedy for a claim that they not only have not proved, but that has been rejected.
4 Defendants' request that Plaintiffs' motion be denied.

5 As an alternative, Plaintiffs assert, Defendant's lack of concern for Arizona's ELL
6 students and lack of respect for this Court's orders, the Court should enjoin the receipt of
7 federal highway funds. Plaintiffs also ask the Court to delay the proposed sanctions for
8 at least 30 days from the issuance of the Court's order so that the Defendants have an
9 opportunity to enact the remedial legislation that is required.

10 The Court views their request for injunctive relief as different and distinct from
11 determining that the AIMS test is biased or has a disparate effect. This is about requiring
12 something of ELL students for which the State has failed to provide the proper foundation
13 and for which the State still wishes to require ELL students to nevertheless hold up the
14 walls.

15 Plaintiffs submission that more than 80% of ELL students in high school have failed
16 the AIMS graduation test is adequate for injunctive relief in light of the egregious delay
17 in complying with the Court's Orders. Until Defendants make the appropriations required
18 for properly funding ELL programs, the State is requiring something of ELL students for
19 which the State has failed to provide the proper foundation. The Court's finding that the
20 AIMS test be enjoined for ELL students is based soley on the facts of this case, and the
21 February 2000 Order, and is not to be construed as any broad characterization of whether
22 or not the AIMS test has a disparate effect on limited English speaking students.

23 **II. Defendant's Request for Court to Make a Ruling**

24 Defendants allege that monies made available through No Child Left Behind
25 ("NCLB") and other funds are now a significant part of the ELL landscape. Defendants
26 argue that the Court should decide whether and to what extent those federal funds can be
27 used in determining the adequacy of ELL funding in Arizona. Defendants assert that in
28

1 their response to Plaintiffs' motion for injunction on January 9, 2002, they stated that the
2 NCLB "will significantly affect public education in general and the provision of language
3 acquisition programs." Defendants contend that the issue of whether HB 2010 should be
4 evaluated by considering all available funding for ELL programs, including that provided
5 by federal funds was not addressed by the Court. Defendants further argue that in the
6 Court's January 28, 2005, Order, it did not say whether Federal funds may be considered
7 in deciding whether the State has "appropriately and constitutionally" funded its ELL
8 programs.

9 Plaintiffs contend that federal funding was addressed at the trial in this case and
10 discussed in the Court's judgment.[7] Plaintiffs state that Defendants request for the Court
11 to consider federal funding is an attempt to relitigate issues that the Court has already
12 decided. Plaintiffs argue that statutorily, federal funds must supplement and not supplant
13 the State's obligation.[8] Moreover, Plaintiffs argue if the Court were to take time to issue an
14 advisory opinion in this matter, its only outcome would be more delay and would not
15 resolve anything at all.

16 The Court agrees. The Court sees this issue as a request to issue an advisory
17 opinion and declines to do the same.

18 Plaintiffs state that the Court should award their attorney's fees due to Defendant's
19 non-compliance with the Court's judgment on January 28, 2000. Plaintiffs allege that for
20 nearly six years the State has done nothing to comply with the Court's judgment. Plaintiffs
21 argue that after the Court ordered the State to perform a cost study in October of 2000, the
22 State took no action even though the cost study was performed. Also, Plaintiffs contend
23 that they returned to the Court to establish a deadline for compliance in August of 2004
24 however, the cost study was not submitted. As a result, Plaintiffs state they returned
25 again to the Court in an effort to ensure compliance. Finally, Plaintiffs argue that the State

---

27 [7]*Flores*, 172 F. Supp.2d at 1236-7(D. Ariz. 2000).

28 [8]No Child Left Behind Act, P.L. 107-110, Secs. 1114(a)(2)(B), 3115(g).

has failed to comply and request the Court to award attorney's fees and costs for the work related to enforcement of the Court's orders that they have performed on this case since judgment was issued on January 24, 2000.

**LEGAL STANDARD**

The Court has jurisdiction over the present action against Defendants by its order dated January 28, 2005, and under the Declaratory Judgment Act, A.R.S. §§ 12-1831 et seq., A.R.S. § 12-864, and Rule 65 (d) of the Federal Rules of Civil Procedure.

"Courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). This power has been relied on to hold city and state legislatures in contempt. *See Spallone v. United States*, 493 U.S. 265, 276 (1990). "When a district court's order is necessary to remedy past discrimination, the court has an additional basis for the exercise of broad equitable powers." *Id*. However, these powers are not unlimited, and the Court is obliged to use the "least possible power adequate to the end proposed." *Id*. *quoting Anderson v. Dunn*, 19 U.S. 204, 231 (1821). In devising a remedy, the Court must take into account the interests of State and local authorities in managing their own affairs, consistent with the Constitution. *Id.*

A district court has the power to adjudge in civil contempt any person who willfully disobeys a specific and definite order of the court. *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984). However, the contempt does not need to be willful and there is no good faith exception to the requirement of obedience to a court order. *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993). A court has wide latitude in determining whether there has been contemptuous defiance of its order. *Gifford*, 741 F.2d at 266. A party should not be held in contempt if the "action appears to be based

on a good faith and reasonable interpretation of the [court's order]." quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982). "Substantial compliance" with the court order is a defense to civil contempt. *Id.* The party alleging civil contempt must demonstrate the alleged contempt or violation of the court's order by clear and convincing evidence, not a preponderance of the evidence. *Id.* While the set of rules the court should use is easy to articulate, they may be difficult to apply. *Id.* The court should determine (1) that the party violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence. *Id..* The record in this case supports that the Plaintiffs have passed this test.

**DISCUSSION AND ANALYSIS**

It is therefore the judgement of the court that the State has failed to comply with this Court's Order, and the Court will apply appropriate sanctions. The Plaintiffs have asked the Court to enjoin the State from receipt of federal highway funds as a sanction. The Court does not think this is an appropriate remedy.

The American Council of Engineering Companies of Arizona and Associated General Contractors of America, Arizona Chapter ("Intervenors") argue that Plaintiffs' motion for sanctions are not related to Arizona's highway funding. Also, Intervenors assert that the Plaintiffs' request for sanctions is made without consideration or respect of the limitations on the authority of the Court both as a matter of applicable law, inherent powers of equity, and the Constitution of the United States. Intervenors further argue that if the relief sought by Plaintiffs is granted, it would have a direct, immediate, and significant impact on Intervenors' member firms.

The Court must use the least possible power to the end proposed. The remedy the Plaintiffs request, enjoining federal highway funds, has no relationship to ELL students. If the Court were to enjoin federal educational funds, it would not only harm ELL students,

it would hurt all students in the Arizona school system. Therefore, the Court will **DENY** Plaintiffs' request to enjoin the receipt of federal highway funds as a sanction.

During the October 2005 hearing, mention was made whether someone should go to jail. Under the circumstances, this is not an appropriate remedy at this time.

The Court has been asked by the Plaintiffs to enjoin the state from requiring that ELL students be subject to passing the AIMS test as a graduation requirement until such time as ELL student's education have been funded at an appropriate level and have had appropriate time to benefit from such funding.

The state of Arizona has spent a great deal of time dealing with the AIMS situation and revised the test several ways to increase the passage rates of those students who are required to take it. However, the State has failed to comply with the Court's judgment for almost six years by under-funding ELL programs, which would provide ELL students with the necessary tools to pass the AIMS test. The State's offering tutoring outside the classroom and other things to all students for the purpose of passing the AIMS test does not remedy the fact that the under-funded ELL programs deprive ELL students of an equal opportunity to pass the AIMS test in the first instance.

The Court therefore **GRANTS** the injunction for relief requested by the Plaintiff and orders that ELL students not be required to pass the AIMS test to secure their diploma until the State has properly funded ELL programs and there has been sufficient time to allow ELL students to compete equally on the test.

**SANCTIONS**

Accordingly,

**IT IS ORDERED** that until Defendants fully comply with the mandates of the February 2000 Order, the State is enjoined from requiring ELL Students to pass the AIMS test as a requirement for graduating from high school.

1 **FURTHER,** it is ordered that upon full compliance, the State may file a motion to lift the injunction and present evidence as to the reasonable time ELL students should remain exempt from the AIMS test as a requirement for high school graduation.

**FURTHER,** it is ordered that the legislature has 15 calendar days after the beginning of the 2006 legislative session to comply with the January 28, 2005 Court order. Everyday thereafter and for the ensuing 30 days that the State fails to comply with this Order, a **$500,000** per day fine for the next 30 days will be imposed until the State is in compliance.

**FURTHER**, if after that, the State has still not complied, the Court will impose a **$1 million dollar** per day fine for the following 30 days until the State is in compliance.

**FURTHER**, if after that, the State has still not complied, the Court will impose a **$1.5 million dollar** per day fine until the end of the 2006 legislative session.

**FURTHER**, if after that, the State has not complied by the end of the 2006 legislative session, a **$2 million dollar** per day fine will be imposed until the State has complied with the January 28, 2005 Court order.

**FURTHER**, it is therefore ordered that Defendants' are to pay Plaintiffs' reasonable attorney's fees for the time period beginning after the January 28, 2005, Court order. Plaintiffs counsel is to submit calculations for said attorney's fees and a proposed order for the Court to approve.

DATED this 15th day of December, 2005.

_____
Raner C. Collins
United States District Judge